**GOMEZ TRIAL ATTORNEYS**
John H. Gomez (171485)
*john@thegomezfirm.com*
Deborah S. Dixon (248965)
*ddixon@thegomezfirm.com*
655 West Broadway, Suite 1700
San Diego, California 92101
Telephone:  (619) 237-3490
Facsimile:   (619) 237-3496

**DICELLO LEVITT GUTZLER LLC**
Greg G. Gutzler*
*ggutzler@dicellolevitt.com*
444 Madison Avenue, Fourth Floor
New York, NY 10022
Telephone:  (646) 933-1000

**THE HABA LAW FIRM, P.A.**
Lisa D. Haba*
*lisahaba@habalaw.com*
1220 Commerce Park Dr, Ste 207
Longwood, FL 32779
Telephone:  (844) 422-2529

*Attorneys for Plaintiffs*

[*Additional Counsel listed on signature page.*]

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>v.<br><br>CISSY STEELE, AKA CISSY GERALD; DIABOLIC VIDEO PRODUCTIONS, INC.; BLACK ICE LTD.; ZERO TOLERANCE ENTERTAINMENT, INC.; THIRD DEGREE FILMS; AND ELEGANT ANGEL, INC.,<br><br>        Defendants. | Case No.:  **'20 CV1818 MMA MSB**<br><br>**COMPLAINT FOR:**<br><br>(1) **VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1591(a);**<br><br>(2) **PARTICIPATING IN A VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1591(a);**<br><br>(3) **CONSPIRACY TO COMMIT VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1594;**<br><br>(4) **PRELIMINARY INJUNCTION; and**<br><br>(5) **VIOLATIONS OF CALIFORNIA LABOR CODE**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

# VERIFIED COMPLAINT

This is a civil action for damages under the United States federal sex trafficking statute, 18 U.S.C. §§ 1591, *et seq.*, arising out of Defendants' sex trafficking of Plaintiff Jane Doe in the States of California and Nevada. Defendant Cissy Steele, AKA Cissy Gerald ("Steele"), using interstate commerce, recruited, lured, and enticed Jane Doe with false promises of lucrative acting and modeling opportunities to sell her for sex. Steele further coerced Jane Doe into engaging in commercial sex acts, knowing that she would use means of force, fraud, and/or intimidation to coerce Jane Doe into engaging in said commercial sex acts.

Defendants Diabolic Video Productions, Inc. ("Diabolic"), Black Ice Ltd. ("Black Ice"), Zero Tolerance Entertainment, Inc. ("Zero Tolerance"), Third Degree Films ("Third Degree"), and Elegant Angel, Inc. ("Elegant Angel") (collectively, "Adult Film Companies"), were instrumental in knowingly aiding, abetting, facilitating, and participating in Steele's sex trafficking scheme, while knowing, or in reckless disregard of the fact, that she would use means of force, fraud, and/or coercion to force Jane Doe into engaging in commercial sex acts in violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). The Adult Film Companies failed to pay Jane Doe for her work, albeit performed out of duress and involuntarily, and the Adult Film Companies profited from Jane Doe's forced labor.

## INTRODUCTION

1. Steele targeted and groomed Jane Doe for the sole purpose of sex trafficking her, in violation of the TVPRA, so that she could profit from Jane Doe's forced commercial sex acts.

2. Steele preyed upon Jane Doe's vulnerabilities and used means of fraud and coercion to sex traffic Jane Doe, including misrepresenting herself as a talent agent that could provide Jane Doe with lucrative modeling and acting opportunities, all the while intending to sex traffic her.

3. Steele coerced and lured Jane Doe to move into her home with her under false pretenses, namely, by fraudulently promising that she would make Jane Doe a model.

4. After Jane Doe moved in with Steele, Steele used psychological manipulation and coercion, intimidation tactics, threats, and physical violence to control, dominate and exploit Jane Doe.

5. Steele forced Jane Doe to engage in commercial sex acts with men at hotels in Los Angeles, CA and Las Vegas, NV, as well as other locations in Southern California, the details not specifically known to Jane Doe at this time. Steele forced Jane Doe to give her the money from these commercial sex acts so she could profit from trafficking Jane Doe.

6. Steele also forced Jane Doe to perform in pornographic videos for the Adult Film Companies against her will and Steele was paid directly by the Adult Film Companies for providing Jane Doe for use in their videos. The Adult Film Companies failed to pay Jane Doe for work performed on their behalf while she acted as an employee for them, although performing work involuntarily.

7. Steele had an on-going relationship with the Adult Film Companies and the Adult Film Companies knew or should have known of Steele's sex trafficking venture, including her sex trafficking of Jane Doe. Far from taking any corrective measures, the Adult Film Companies ratified and perpetuated the human trafficking scheme by continuing to facilitate the production of pornography using Jane Doe and other women while paying Steele directly.

8. The Adult Film Companies participated in Steele's sex trafficking venture, knowing she was using means of fraud, force, and coercion to traffic Jane Doe, because they knowingly benefited from her illegal venture by selling videos and posting videos through online websites that featured Jane Doe for profit.

9. Steele's conduct violates the TVPRA because she knowingly used means of force, fraud, and coercion to force Jane Doe to engage in commercial sex so that she could profit from the activity.

10. The Adult Film Companies' conduct violates the TVPRA because they benefitted, financially or otherwise, by aiding and abetting, facilitating, and participating in Steele's sex trafficking venture, knowing that she would use means of fraud, force, and coercion to sex traffic Jane Doe.

## JURISDICTION AND VENUE

11. This Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs bring this action under the federal TVPRA statute.

12. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because all claims alleged herein are part of a continuing conspiracy and uniform pattern and practice and form part of the same case or controversy.

13. This Court is "an appropriate district court of the United States" in accordance with 18 U.S.C. § 1595, as venue is proper in this District under 28 U.S.C. § 1391(b)(2), because based on information and belief, some of the acts occurred in this District, Defendants sex trafficked Jane Doe in California and, therefore, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

14. Plaintiff Jane Doe is using a pseudonym to protect her identity because of the sensitive and highly personal nature of this matter.

15. Plaintiff is also at serious risk of retaliatory harm because Steele has continued to contact Jane Doe and her family, threatening physical violence against her.

16. Plaintiff is also particularly vulnerable because of the trauma that she has been subjected to and her socioeconomic status.

17. Plaintiff's safety, right to privacy, and security outweighs the public interest in her identification.

18. Plaintiff's legitimate concerns also outweigh any prejudice to Defendants by allowing Plaintiff Jane Doe to proceed anonymously.

19. Defendant Cissy Steele, AKA Cissy Gerald, is a United States citizen who currently resides in Las Vegas, Nevada.

20. Upon information and belief, Defendant Diabolic Video Productions, Inc. is a California corporation with its principal place of business located at 20525 Nordhoff, Suite 4, Chatsworth, California. Diabolic is a pornographic film studio that was founded in 1998. Diabolic solely paid Steele directly for the coerced work of Plaintiff Jane Doe.

21. Upon information and belief, Elegant Angel, Inc. is a California corporation with its principal place of business located 20821 Dearborn Street, Chatsworth, California. Elegant Angel is a pornographic film studio that was founded in 1990. Elegant Angel solely paid Steele directly for the coerced work of Plaintiff Doe.

22. Upon information and belief, Defendant Black Ice Ltd. is a California corporation with its principal place of business located at 20525 Nordhoff Suite 4, Chatsworth, California. Black Ice is a pornographic film studio that was founded in 2005 under the umbrella company, Third Degree Films. Black Ice solely paid Steele directly for the coerced work of Plaintiff Jane Doe.

23. Upon information and belief, Defendant Zero Tolerance Entertainment, Inc. is a California corporation with its principal place of business also located a 20525 Nordhoff, Suite 25, Chatsworth, California. Zero Tolerance is a pornographic film studio that was founded in 2002 under the umbrella company, Third Degree Films. Zero Tolerance is a 'mere continuation' or 'alter ego' corporation of Black Ice in that there is substantial continuity between the business operations of Black Ice and Zero Tolerance and the principal assets of Black Ice, or all or substantially all of Black Ice's assets, were transferred for less than fair value to Zero Tolerance and Greg Alves ("Alves") and Greg Dunn ("Dunn") were officers, directors, or stockholders of both corporations. Additionally, as officers, directors, or stockholders of both corporations, Alves and Dunn had notice of the wrongful conduct alleged herein.

24. Individually and through their agents, associates, attorneys, or employees, all Defendants have done or are doing business in Los Angeles, California. At all relevant times, Defendants operated enterprises engaged in interstate commerce or in the production of goods for interstate commerce.

# FACTS

## I. Steele Knowingly Lured and Enticed Jane Doe, Using Means of Force, Fraud, and Coercion, to Engage in Commercial Sex Acts.

25. In September 2009, Plaintiff Jane Doe was aspiring to be a model. Jane Doe was approached by Steele, who falsely claimed to be a talent agent for models.

26. Unknown to Jane Doe, however, Steele was actually a "madame," who falsely posed as a talent agent, to lure and entice young women into her sex trafficking venture so that she could profit from their forced commercial sex acts.

27. Steele held herself out in public as "Miss. Madame" and used this name on her social media platform where she posted images about the trafficking lifestyle. Steele also referred to herself as "Bosslady" and had pictures up on social media depicting her lifestyle as a Madame and a trafficker.



///
///
///
///
///
///
///



28. Steele told Jane Doe that she could make her a model and gave her a business card, which listed her talent agency as "Royal Loyalty Management."

29. Approximately one week later, Steele called Jane Doe and arranged to come to her home, under the false pretense of discussing a modeling career.

30. While at Jane Doe's home, Steele again promised her that she could make her a modeling star. She told Jane Doe that she knew a multi-millionaire, influential fashion designer that was looking for models and that she could introduce her to him.

31. In October 2009, Steele lured and enticed Plaintiff to move into her home with her, in reliance on Steele's promise that it would help her career as a model.

32. Initially, Steele arranged for Plaintiff to do several modeling photo shoots, which reinforced her belief that Steele was a talent agent that would help her pursue a modeling career. Steele also continued to promise to introduce her to the fashion designer.

33. After approximately four or five months, however, Steele's demeanor towards Jane Doe began to change. Steele became both mentally and physically abusive to Jane Doe.

34. Steele began to degrade Jane Doe and told her that she would never make it as a model or actress. Eventually, Steele told Jane Doe that the only way she would be a model or actress was to do pornographic films, but Jane Doe declined.

35. When Jane Doe refused to comply with Steele's orders, Steele began constantly threatening Jane Doe and her family. Steeled threatened to have Jane Doe's dog killed on several occasions and also threatened to have people harm Jane Doe's family if Jane Doe did not comply with Steele's demands. Steele also physically abused Jane Doe, often using physical violence, if Jane Doe did not obey Steele.

## II.  Steele Forced Jane Doe to Engage in Commercial Sex Acts, Using Fraud, Threats, and Physical Force.

36. Although Steele eventually did introduce Jane Doe to the influential fashion designer, as she promised, the sole purpose was to provide Jane Doe to him for commercial sex acts—not to help her pursue a modeling career as she told Jane Doe.

37. The fashion designer was a man named Peter Nygard, a man who is currently engaged in a lawsuit in which he has been sued for sex trafficking and rape.

38. Steele told Jane Doe that they were going to a party at the fashion designer's home so that they could discuss potential modeling opportunities. Steele did not tell Jane Doe that the fashion designer had paid Steele for commercial sex acts with Jane Doe.

39. Once they were at the party, Steele provided Jane Doe to the fashion designer for commercial sex acts.

40. Steele also began forcing and/or coercing Jane Doe to engage in commercial sex acts with other men in Los Angeles, CA and Las Vegas, NV.

41. Steele would set-up "dates" for Jane Doe and would negotiate the payment rates with the men in advance.

42. Steele would then drive Jane Doe to the "dates" at various hotels in the Los Angeles area, selected by the "clients," where Plaintiff was forced and/or coerced to engage commercial sex acts with them.

43. Steele would wait in the car for Jane Doe while Jane Doe performed commercial sex acts with the men. When Jane Doe returned to the car, Steele would collect the money from her. If Jane Doe attempted to withhold any money from Steele, Steele would use physical violence against Jane Doe.

44. Steele forced and/or coerced Jane Doe to engage in commercial sex acts with men, on average, two to three times per day, seven days per week. Steele always collected the money from Jane Doe.

45. Steele would also force Jane Doe to travel to Las Vegas with her to engage in commercial sex acts with men, working out of the Mandalay Bay Hotel. Steele forced Jane Doe to ingest ecstasy while in Las Vegas in order to keep her active and "working." Jane Doe made approximately $1,000 to $3,000 each night while in Las Vegas and was forced to give all the money to Steele.

46. Steele also had several other young women working for her while she was in Las Vegas. Steele referred to the girls that she forced and coerced to work for her as her "bitches." The girls that made her the most money received special treatment and/or privileges. Those who did not earn as much as Steele expected were punished and/or beaten.

### III. Steele Forced Jane Doe to Perform in Pornographic Videos for the Adult Film Companies Against her Will and the Adult Film Companies Knew, or Were in Reckless Disregard of the Fact, That Steele was Trafficking Jane Doe.

47. Steele has a longstanding relationship with the Adult Film Companies and speaks with their executives and/or agents on a regular basis. Jane Doe overheard Steele speaking with representatives of the Adult Film Companies on the phone, offering Jane Doe and other women to perform sexual acts as an actor in pornographic videos.

48. Upon information and belief, the Adult Film Companies only paid Steele for Jane Doe's coerced pornography production. The Adult Film Companies never financially compensated Plaintiff or any of the other "Steele girls" for the work they performed. Defendant Adult Film Companies either never obtained written consent or established any kind of contractual relationship with Jane Doe, or any such "release" was signed under

duress, for the services rendered but nevertheless profited, along with Steele, off of the production and publication of the pornography Jane Doe took part in.

49. During 2010, Steele forced Plaintiff to do pornographic films for the Adult Film Companies. When Jane Doe protested, Steele threatened her and her family with violence and also physically struck Jane Doe.

50. Based on Steele's physical violence to Jane Doe and threats of physical violence to Jane Doe and her family, Jane Doe was in fear of harm and complied with Steele's demands and instructions.

51. Steele would transport Jane Doe to the Adult Film Companies' studios. Jane Doe would go inside and sexually perform as instructed and directed by the Adult Film Companies' employees and Steele. Afterwards, Jane Doe would call Steele, as instructed, and Steele would pick Jane Doe up from the Adult Film Companies' production studios and transport her back to her residence.

52. The Adult Film Companies paid Steele directly for Jane Doe's performance in the pornographic films, usually a few weeks later by check, knowing or recklessly disregarding the fact that Steele was coercing and/or forcing Jane Doe to perform in the pornographic films.

53. Jane Doe never saw the checks that Steele received from the Adult Film Companies and does not know how much she was paid for providing Jane Doe to the Adult Film Companies. Jane Doe never received any money for her performance in any of the pornographic films that she did for the Adult Film Companies.

**IV.   Jane Doe Escaped from Steele.**

54. Jane Doe was forced and/or coerced to participate in Steele's sex trafficking scheme. Steele constantly threatened Jane Doe, saying "you don't want to know what will happen to you" if she left. Steele also threatened to have Jane Doe killed, threatened her family, and threatened to kill her dog if she did not cooperate.

55. Steele would commit physical violence against Jane Doe if she resisted or did not cooperate. Steele, on numerous occasions, would exert control over Jane Doe by forcing her to take illicit drugs, thus making Jane Doe dependent on her.

56. As a direct result of Steele's threats, violence, and coercion, Jane Doe was afraid to leave.

57. In late 2010, Jane Doe became suicidal. Despite the threats to her and her family, she felt that she had to escape or she would kill herself.

58. Jane Doe began secretly looking for places to live when she was left alone by Steele. Jane Doe was able to find a friend that agreed to let her move in with her, since Jane Doe did not have any money.

59. Jane Doe secretly began moving some of her things to her friend's home when Steele was not around. Jane Doe was eventually able to escape Steele's control one night in the middle of the night and never went back.

60. After escaping, Jane Doe changed her phone number and ceased all communication with Steele.

## V. Steele Continued to Threaten Jane Doe and Her Family After Jane Doe Escaped.

61. After Jane Doe escaped Steele's control, Steele began calling Jane Doe's mother and neighbor, threatening them and Jane Doe if she did not return. Steele made threatening calls to Jane Doe's neighbor and mother almost every week after Jane Doe left her control.

62. Steele threatened to find Jane Doe and hunt her down if she did not return and/or if she did not remain silent about Steele's sex trafficking scheme.

63. Steele also attempted to lure and entice Jane Doe to return back to her control by promising to pay her and buy her things.

64. Due to Steele's psychological manipulation, constant threats, and physical abuse, Jane Doe was too afraid to report Steele to authorities out of fear for her own well-being and the well-being of her family.

## VI. Plaintiff's Claims are within the Statute of Limitations; alternatively, the Statue of Limitations Should be Tolled Because Steele Uses Threats and Force to Prevent Victims from Pursuing Their Claims.

65. Plaintiff was sex trafficked from 2009 until 2011, when she escaped from Steele.

66. Plaintiff's claims against Defendants for actions occurring between 2010 until 2011 include claims against Steele and the Adult Film Companies for conspiracy to violate Section 1591's ban on sex trafficking.

67. Steele and the Adult Film Companies conspiracy to violate Section 1591 continued from at least 2010 until Plaintiff's escape in 2011.

68. Because Plaintiff's claims regarding conduct occurring before 2011 are based on a continuing conspiracy, their timeliness is assessed based on when the conspiracy ended.

69. Steele and the Adult Film Companies' sex trafficking conspiracy continued until at least 2011, which is within Section 1595's ten-year statute of limitations.

70. Plaintiff's claims, including those for conduct occurring before 2011, are thus timely.

71. In the alternative, due to extraordinary circumstances and Steele's conduct, which prevented, to the extent applicable, Plaintiff from bringing her claims, the applicable statute of limitations is equitably tolled for all of Plaintiff's claims for actions occurring during the time of Plaintiff's exploitation, ending in 2011.

72. The general rule is that statutes of limitations are subject to equitable tolling. *See United States v. Locke*, 471 U.S. 84, 94 n.10 (1985) ("Statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling."); *Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute.") (quotation marks and citations omitted).

73. Plaintiff, to the extent applicable here, pursued her rights diligently and she was impeded because of a combination of force, threats of force, shame, embarrassment, fear, and weak laws that are rarely enforced to protect the victim. As a result, to the extent necessary, all applicable statutes of limitations should be equitably tolled as to claims for conduct occurring before 2011.

74. To the extent that Plaintiff was unable to pursue her claims for conduct occurring before 2011, she was legitimately and justifiably afraid that Steele would harm and/or retaliate against her and her family if she pursued any claim against her and others.

75. As discussed herein, Steele used physical violence and financial pressure to intimidate Plaintiff and prevent her from coming forward.

76. Due to Steele's power and intimidation tactics and violence, Plaintiff reasonably believed that she and her family were in mortal danger.

77. Steele has close associations with shadowy figures with histories of violence and intimidation.

## CLAIMS ALLEGED

## COUNT I

## VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1591(a)

78. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-77, as if fully set forth in this Count.

79. Steele knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. § 1591(a)(1), occurring within the territorial jurisdiction of the United States.

80. Steele's conduct was in or affecting interstate or foreign commerce for purposes of the TVPRA.

81. Steele knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited Jane Doe for the purpose of

causing her to engage in a commercial sex acts, through the use of force, fraud, and/or coercion, pursuant to 18 U.S.C. § 1591(a).

82. Jane Doe engaged in commercial sex acts with different men, due to Steele's use of force, fraud and/or coercion.

83. Steele fraudulently promised or promised to provide Jane Doe something of value in exchange for each sexual act, including a future modeling career and/or portions of the profits obtained from her commercial sex acts.

84. Steele received financial compensation for Jane Doe's sex trafficking.

85. Steele's conduct has caused Jane Doe serious and permanent harm, including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

## COUNT II

### PARTICIPATING IN A VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1591(a)

86. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-77, as if fully set forth in this Count.

87. Defendants participated in a venture together, in violation of 18 U.S.C. § 1591(a)(2).

88. The Adult Film Companies knowingly benefited from, and received value for, their participation in the venture, in which Steele, with the Adult Film Companies' knowledge, or in reckless disregard of the fact, that Steele would defraud, force, and/or coerce Jane Doe to engage in commercial sex acts.

89. The Adult Film Companies knew or were in reckless disregard of the fact that it was Steele's pattern and practice to use the interstate commerce and the resources provided by the Defendants to entice and recruit young aspiring female models into commercial sex acts based on the promise of lucrative modeling opportunities. The Adult

Film Companies' employees and/or agents had actual knowledge that they were facilitating and participating in Steele's scheme to recruit, entice, coerce, and/or solicit Jane Doe into commercial sex acts, through the use of force, fraud, and/or coercion.

90. Despite such knowledge, the Adult Film Companies facilitated and participated in Steele's violations of 18 U.S.C. § 1591, where the they knew, or were in reckless disregard of the facts that Steele would use coercion, fraud, and/or force to get Jane Doe, an aspiring young model, to engage in commercial sex acts.

91. The Adult Film Companies knowingly benefited financially and/or personally from Steele's sex-trafficking venture and the exploitation of Jane Doe.

92. By facilitating and participating in Steele's sex trafficking venture, the Adult Film Companies profited from Jane Doe's forced and/or coerced participation in their pornographic films.

93. By facilitating and participating in Steele's sex trafficking venture, received sex from Jane Doe and other women under Steele's control.

94. The Adult Film Companies' conduct has caused Jane Doe serious harm including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

## COUNT III

### CONSPIRACY TO COMMIT VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1594

95. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-77, as if fully set forth in this Count.

96. The Adult Film Companies conspired with Steele, by agreement or understanding, to further Steele's unlawful plan and/or purpose to commit illegal commercial sex acts with Jane Doe.

97. The Adult Film Companies committed overt acts in furtherance of the agreement or understanding by knowingly using Jane Doe, against her will, to perform in their pornographic films and/or to engage in sexual activity and paying Steele for such use.

98. The Adult Film Companies' participation in the furtherance of Steele's illegal sex trafficking plan and/or purpose was intentional and/or willful and, therefore, the Adult Film Companies intentionally and/or willfully caused Jane Doe's commission of the sex acts in their affirmative acts supporting Steele.

99. The Adult Film Companies knew that their acts and conduct supporting and facilitating Steele would lead to commercial sex acts by Jane Doe.

100. The Adult Film Companies conspired with Steele through their affirmative acts and provided substantial support to Steele forcing and/or coercing Jane Doe to engage in commercial sex acts.

101. The Adult Film Companies conduct has caused Jane Doe serious harm, including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

## COUNT IV

## PRELIMINARY INJUNCTION

102. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-77, as if fully set forth in this Count.

103. Unless this Court enjoins Defendants from promoting, publishing, disseminating, and/or selling pornographic videos featuring Plaintiff Jane Doe, she will continue to sustain irreparable harm in the form of emotional distress and reputational damage.

104. Plaintiff Jane Doe has no adequate remedy at law to cure this problem, as monetary damages will not suffice.

1   105. Unless an injunction is issued, Defendants will continue to promote, publish,
2  disseminate, and/or sell pornographic videos featuring Plaintiff Jane Doe and Plaintiff will
3  continue to suffer irreparable harm.
4   106. Videos featuring Plaintiff Jane Doe are currently being promoted, published,
5  and/or disseminated on the internet and through other means, including, without limitation,
6  the following:

https://m.sss.xxx/imani%20rose/longest/

https://streamporn.pw/actor/tatum-onassis/

https://eroticax.org/xfsearch/name-link/Tatum+Onassis/

https://eroticax.org/xfsearch/name-link/Tatum+Onassis/

http://xxnx.ink/search/imani-rose-and-tatum-onassis-pu.php

http://www.dvdtrailertube.com/Tatum-Onassis-movies.html

http://www.dvdtrailertube.com/-Elegant-Angel-trailer-24922.html

https://1337x.unblocked.to/torrent/4331147/Breast-Beginnings-Diabolic-Video-Natasha-Dulce-Tatum-Onassis-Mariah-Love-Giselle-Taylor-Breanna-Getz/

https://pornfile.xxx/2017/02/13/diabolic-breast-beginnings-tatum-onassis-daniel-hunter-anus-external-lingerie/

http://www.iafd.com/results.asp?searchtype=comprehensive&searchstring=Tatum+onassis

http://www.iafd.com/person.rme/perfid=tatumonassis/gender=f/tatum-onassis.htm

http://www.jadedvideo.com/artist/Tatum_Onassis.6-52388.html

https://www.mrporn.com/pornstar-Tatum-Onassis.html

http://freeones.mallcom.com/pornstar.html?id=7018

https://tubexxxone.com/en/oneddir/dW0tMjQ4LTExNzUwNjkx/Anal-Threesome-With-Imani-Rose-And-Tatum-Onassis/

http://eupornotube.com/search/Tatum-Onassis/longest.htm

107.  Plaintiff Jane Doe is entitled to preliminary and permanent injunctive relief, including prohibiting Defendants from continuing to promote, publish, disseminate, and/or sell any pornographic videos featuring Plaintiff Jane Doe.

## COUNT V

## VIOLATIONS OF CALIFORNIA LABOR CODE sections 201 *et. seq.* (AGAINST DEFENDANTS ADULT FILM COMPANIES)

108.  Plaintiff Jane Doe realleges and incorporates by reference the allegations contained in paragraphs 1-77, as if fully set forth in this Count.

109.  Plaintiff was forced to work for Adult Film Companies.  Adult Film Companies failed to pay Jane Doe for work she performed for the benefit of Adult Film Companies, in violation of California law and the California Labor Code, including but not limited to sections 201, 1194 and 226.8.

110.  There is a presumption in California that all persons performing work for the benefit of another are considered employees.  Although not performing the services voluntarily, the Adult Film Companies were still required to pay Jane Doe for services she provided for their benefit.  Instead, the Adult Film Companies never paid Jane Doe for work she performed, although the Adult Film Companies profited substantially.

111.  The Adult Film Companies owe Jane Doe unpaid wages for all work she performed while acting as an employee of the Adult Film Companies. Jane Doe is also entitled to statutory penalties and back pay damages against Adult Film Companies for their negligent or intentional failure to pay her all wages owed for services performed.

112.  Defendants either intentionally or negligently never provided wage statements to Jane Doe and did not provide her with annual tax statements identifying the hours of work she performed.

113. As a result of the Adult Film Companies failure to pay Jane Doe any wages, she was not paid minimum wage, a separate violation of California regulations and Labor Code.

114. As a result of Adult Film Companies conduct, Jane Doe has suffered monetary damages, including owed wages, statutory penalties and interest and attorneys' fees.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in her favor, and against Defendants, as follows:

a. That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts and practices described herein;

b. A finding of an alter ego between Black Ice Entertainment Ltd, Zero Tolerance Entertainment and Third Degree Films Inc, thus piercing the corporate veil;

c. That the Court award Plaintiff compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

d. Requiring restitution and disgorgement of all profits and unjust enrichment obtained as a result of Defendants' unlawful conduct;

e. That the Court award punitive or exemplary damages in an amount to be determined at trial;

f. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

g. That the Court award statutory damages and penalties;

h. That the Court award pre- and post-judgment interest at the maximum legal rate; and

i. That the Court grant all such other relief as it deems just and proper.

///
///
///
///

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 15, 2020  By:  /s/ John H. Gomez
John H. Gomez, Esq.
Deborah S. Dixon, Esq.
**GOMEZ TRIAL ATTORNEYS**

Greg G. Gutzler*
**DICELLO LEVITT GUTZLER LLC**
444 Madison Avenue, Fourth Floor
New York, NY 10022
Telephone: (646) 933-1000
*ggutzler@dicellolevitt.com*

Mark A. DiCello*
Robert F. DiCello*
Justin J. Hawal*
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, OH 44060
Telephone: (440) 953-8888
*mad@dicellolevitt.com*
*rfdicello@dicellolevitt.com*
*jhawal@dicellolevitt.com*

Lisa D. Haba*
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Ste. 207
Longwood, FL 32779
Telephone: (844) 422-2529
*lisahaba@habalaw.com*

Marie E. Bryant*
**THE HABA LAW FIRM, P.A.**
4575 Via Royale, Ste. 102
Ft. Myers, FL 33919
Telephone: (844) 422-2529
*mariabryant@habalaw.com*

*Pro Hac Vice Application Pending*

***Counsel for Plaintiff Jane Doe***