1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**
9                        **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   JANE DOE,                                 Case No. 20-cv-1818-MMA (MSB)
12                            Plaintiff,
                                               **ORDER DENYING MOTION TO**
13   v.                                        **COMPEL ARBITRATION**

14   CISSY STEELE, et al.,
                                               [Doc. No. 25]
15                            Defendants.
16
17

18       Jane Doe ("Plaintiff") brings this action against multiple Defendants alleging that

19   she was targeted and groomed "for the sole purpose of sex trafficking her, in violation of

20   the [Trafficking Victims Protection Reauthorization Act]."  Doc. No. 12 ("FAC") ¶ 1.

21   A group of Defendants—Diabolic Video Productions, Inc. ("Diabolic"); Black Ice LTD

22   ("Black Ice"); Zero Tolerance Entertainment, Inc. ("Zero Tolerance"); and Third Degree

23   Films ("Third Degree") (collectively, "Video Defendants")—now move to compel

24   arbitration.  *See* Doc. No. 25.  Plaintiff filed an opposition to Video Defendants' motion,

25   and Video Defendants replied.  *See* Doc. Nos. 30, 33.  The Court found the matter

26   suitable for determination on the papers and without oral argument pursuant to Federal

27   Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. No. 34.  For the

28   reasons set forth below, the Court **DENIES** Video Defendants' motion.

# I. BACKGROUND

Plaintiff's action arises from sex trafficking allegations against one individual and several pornographic film studios and websites. *See* FAC ¶¶ 1–8, 20–31.

Representing herself as a talent agent and promising to make Plaintiff a model, Cissy Steele ("Steele") allegedly targeted and groomed Plaintiff for sex trafficking in California and Nevada. *See id.* ¶¶ 1, 2, 14. Plaintiff claims Steele "coerced and lured [Plaintiff] to move into her home" where Steele then used "psychological manipulation and coercion, intimidation tactics, threats, and physical violence to control, dominate and exploit [Plaintiff]." *Id.* ¶¶ 3, 4. Plaintiff further avers that Steele forced Plaintiff to engage in "commercial sex acts" and then forced Plaintiff to give the profits to her. *Id.* ¶ 5. Additionally, Plaintiff alleges that Steele forced her to perform in pornographic videos for adult film companies against her will. *See id.* ¶ 6. The film companies paid Steele directly and failed to pay Plaintiff for her involuntary work. *Id.* Additionally, Plaintiff alleges that the pornographic film studios and websites participated in Steele's sex trafficking venture because they knew, or should have known, Steele was trafficking Plaintiff and "knowingly benefited from her illegal venture by selling videos and posting videos through online websites that featured [Plaintiff] for profit." *Id.* ¶¶ 7–8.

Based on these allegations, Plaintiff has brought seven causes of action: (1) violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1591(a); (2) participation in a venture in violation of the TVPA, 18 U.S.C. § 1591(a); (3) financially benefiting from sex trafficking in violation of the TVPA, 18 U.S.C. § 1595; (4) conspiracy to commit violation of the TVPA, 18 U.S.C. § 1594; (5) violation of record keeping requirements, 18 U.S.C. § 2257; (6) preliminary and permanent injunction; and (7) violations of California Labor Code §§ 201, 226.8, 1194. *Id.* ¶¶ 136–88. Video Defendants now move to compel arbitration based upon written arbitration agreements between Plaintiff and Video Defendants. *See* Doc. No. 25.

# II. LEGAL STANDARD

20-cv-1818-MMA (MSB)

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4.  Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration.  *Id.*  The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements.  *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011).  Federal courts are required to rigorously enforce an agreement to arbitrate.  *See id.*

In determining whether to compel a party to arbitration, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also* 9 U.S.C. § 4.  If the Court finds that the answers to both questions are "yes," then the Court must compel arbitration.  *Chiron Corp.*, Inc., 207 F.3d at 1130.  A court's circumscribed role in making these inquiries "leav[es] the merits of the claim and any defenses to the arbitrator."  *Id.* (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)).

As to the first inquiry—whether the parties agreed to arbitrate—courts adopt a standard similar to summary judgment.  *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991); *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017).  Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Courts must apply ordinary state law principles in determining whether to invalidate an agreement to arbitrate.  *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002).  As such, arbitration agreements may be

3

1   "invalidated by 'generally applicable contract defenses, such as fraud, duress, or

2   unconscionability.'" *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v.*

3   *Casarotto*, 517 U.S. 681, 687 (1996)).  In assessing whether there is an agreement to

4   arbitrate, the presumption and policy in favor of arbitration do not apply, and instead, the

5   issue is determined through standard contract law principles.  *See Comer v. Micor, Inc.*,

6   436 F.3d 1098, 1104 n.11 (9th Cir. 2006); *see also E.E.O.C. v. Waffle House, Inc.*, 534

7   U.S. 279, 293 (2002).

8          As to the second inquiry—whether the agreement encompasses the dispute at

9   issue—courts resolve any "ambiguities as to the scope of the arbitration clause itself . . .

10  in favor of arbitration."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,

11  489 U.S. 468, 475–76 (1989); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

12  *Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues

13  should be resolved in favor of arbitration, whether the problem at hand is the construction

14  of the contract language itself or an allegation of waiver, delay, or a like defense to

15  arbitrability.").  Moreover, "the party resisting arbitration bears the burden of proving

16  that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Alabama v.*

17  *Randolph*, 531 U.S. 79, 91 (2000).  Absent contractual ambiguity, "it is the language of

18  the contract that defines the scope of disputes subject to arbitration."  *Waffle House, Inc.*,

19  534 U.S. at 289.

## III. DISCUSSION

21         Video Defendants argue that arbitration is required because there is an arbitration

22  agreement that encompasses the dispute at issue.  *See* Doc. No. 25 at 2.  Video

23  Defendants request that the Court order the parties to arbitrate and stay this action

24  pending the outcome of arbitration.  *See id.* at 9.  Plaintiff responds that the Court should

25  not order arbitration because the agreements are unconscionable and the result of duress

26  and undue influence.  *See* Doc. No. 30 at 2.  Plaintiff further argues that there would be

27  conflicting rulings on common factual and legal issues if the Court were to compel

28  arbitration.  *See id.* at 2, 8.

**A. Choice of Law**

Because Plaintiff raises state law contract defenses, the Court first must assess what state law to apply. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010) ("Before a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must determine which state's laws to apply. It makes this determination using the choice-of-law rules of the forum state . . . ."). A federal court resolving a dispute involving nonfederal law applies the forum state's choice-of-law rules to decide the governing substantive law. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)) ("Federal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'"). Federal courts deciding nonfederal law in California apply California's choice-of-law rules. *See Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1036 (S.D. Cal. 2017); *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1151 (1992).

"When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (quoting *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam)). Under the Restatement approach, the court must first determine

> (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue." If California has a

20-cv-1818-MMA (MSB)

1
2
3

materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

4   *Nedlloyd Lines B.V.*, 834 P.2d at 1152 (footnotes omitted) (quoting Restatement (Second)

5   of Conflict of Laws § 187(2)(b) (Am. Law Inst. 1971)).  Section 187(2)'s fundamental

6   policy analysis "refers not merely to the forum state . . . but rather to the state '. . . which,

7   under the rule of § 188, would be the state of the applicable law in the absence of an

8   effective choice of law by the parties.'"  *Id.* at 1152 n.5 (quoting Restatement (Second) of

9   Conflict of Laws § 187(2)(b)).

10          Here, the Performer Agreements contain a choice-of-law provision: "California

11   law, excluding any laws that direct the application of another jurisdiction's laws, shall

12   govern this Agreement, and any dispute arising from it or the relationship created by it."

13   Doc. No. 25-2 at 26, 30.  Given the choice-of-law provision, the Court applies California

14   law regarding contract defenses unless the Restatement approach requires a different

15   result.  The parties do not dispute the applicable law and rely upon California law in

16   arguing whether Plaintiff brings successful contract defenses.  *See* Doc. No. 30 at 2–8;

17   Doc. No. 33 at 2–7.  Moreover, Plaintiff and Video Defendants reside or are based in

18   California, and the underlying films appear to have been filmed in California.  *See* FAC

19   ¶¶ 21, 23, 24; Doc. No. 25-2 at 2, 14, 28.  Thus, it appears that California law would be

20   applied even in the absence of the choice-of-law provision.  *See Application Grp., Inc. v.

21   Hunter Grp., Inc.*, 72 Cal. Rptr. 2d 73, 84 n.12 (Ct. App. 1998) ("[A]n early

22   determination that the chosen state and the state that would provide 'the applicable law in

23   the absence of an effective choice of law by the parties' are one and the same, or a

24   finding that the chosen state is the only state with a significant interest in having its law

25   applied, obviates any need to weigh the forum's public policy interests against the chosen

26   state's interests or to determine which state has the 'materially greater interest' in having

27   its law applied."); *1-800-Got Junk? LLC v. Superior Court*, 116 Cal. Rptr. 3d 923, 932

28   (Ct. App. 2010) (quoting *Washington Mut. Bank, FA v. Superior Court*, 15 P.3d 1071,

1  1079 (Cal. 2001)) (stating that if the selected state has a substantial relationship to the

2  parties or their transaction, then the burden shifts to the party challenging the choice of

3  law provision to show a violation of a fundamental policy and greater material interest).

4  Accordingly, the Court applies California law to analyze Plaintiff's contract defenses.

5  **B. Whether a Valid Arbitration Agreement Exists**

6        Video Defendants argue that the Court should compel arbitration because

7  Plaintiff's claims against them fall under the arbitration provision of the Performer

8  Agreements.  *See* Doc. No. 25 at 8.  Refuting allegations that they worked with

9  Defendant Steele, Video Defendants claim that that "the two scenes at issue were

10  purchased from Anthony Stebbins ['Stebbins']."  *Id.* at 8; *see also* Doc. No. 25-2 at 2–12

11  (providing the "Agreement for Sale of a Completed Motion Picture" between Stebbins

12  and Black Ice); *id.* at 14–24 (providing the "Agreement for Sale of a Completed Motion

13  Picture" between Stebbins and Diabolic).[1]  In addition to the footage, Video Defendants

14  contend that Stebbins "assigned and transferred the Performer Agreements and personal

15  identification of Plaintiff to Diabolic and Black Ice."  Doc. No. 25 at 8–9; *see also* Doc.

16  No. 25-2 at 26–28 (providing the "Performer/Assistant Agreement and Release"

17  ("Performer Agreement") between Stebbins and Plaintiff for the work ultimately

18  purchased by Black Ice); *id.* at 30–33 (providing the Performer Agreement between

19  Stebbins and Plaintiff for the work ultimately purchased by Diabolic, Inc.).  Video

20  Defendants assert that Plaintiff has not alleged that Stebbins took part in the alleged sex

21  trafficking.  *See* Doc. No. 25 at 9.  Moreover, Video Defendants argue that the Performer

22  Agreements require any dispute between Plaintiff and Video Defendants to be resolved in

23

24  _____

25  [1] Gregg Dunn ("Dunn") provides a declaration that shows the relationship between Video Defendants.

26  *See* Dunn Decl., Doc. No. 25-1.  Dunn was the Chief Executive Officer ("CEO") of Black Ice and Third
Degree prior to their dissolution in 2016.  *See id.* ¶ 2.  Dunn is the current CEO of Diabolic and Zero
Tolerance.  *See id.* ¶ 1.  Additionally, Plaintiff alleges that Black Ice and Zero Tolerance were created

27  under the umbrella company of Third Degree.  *See* FAC ¶¶ 23, 24.  Plaintiff further claims that Zero
Tolerance is a "mere continuation" or "alter ego" of Black Ice, and Black Ice's assets were transferred to

28  Zero Tolerance.  *Id.* ¶ 24.

arbitration.  *See id.*; *see also* Doc. No. 25-2 at 26 (providing the arbitration clause in the Performer Agreement between Stebbins and Plaintiff for the work ultimately purchased by Black Ice); *see also id.* at 30 (providing the arbitration clause in the Performer Agreement between Stebbins and Plaintiff for the work ultimately purchased by Diabolic).

Plaintiff responds there is no enforceable arbitration agreement because the Performer Agreements are unconscionable and the result of duress or undue influence. *See* Doc. No. 30 at 2–3.  The Court addresses these contract defenses in turn.

### 1. Unconscionability

Plaintiff argues that the arbitration provisions between Plaintiff and Video Defendants are both procedurally and substantively unconscionable.  *See id.* at 3. Plaintiff asserts that the Performer Agreements are procedurally unconscionable because they were contracts of adhesion and she was not given a chance to review or discuss the significance of the agreements.  *See id.* at 4.  Plaintiff contends that the Agreements are substantively unconscionable because they "contained little to no details concerning how she might initiate arbitration in the event of a dispute, and they contained no explanation of the significance of the provisions."  *Id.* at 5.

Video Defendants respond that Plaintiff does not provide any evidence to show that the Performer Agreements are unconscionable.  *See* Doc. No. 33 at 3.  They claim that Plaintiff merely relies on "legal boilerplate and generalities" and, thus, fails to meet her burden to prove procedural or substantive unconscionability.  *Id.*  As to procedural unconscionability, Video Defendants assert that Plaintiff does not provide proof that she was denied a choice in signing the Performer Agreements or explanations as to how the Agreements constitute contracts of adhesion.  *Id.*  As to substantive unconscionability, Video Defendants respond that the arbitration provisions provide each party the rights and remedies available in a court, and the references to the California Code of Civil Procedure provide comprehensive rules for conducting arbitration.  *See id.* at 6.

A general contract defense of "unconscionability . . . may operate to invalidate arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).  The party asserting that an agreement is unconscionable bears the burden of proof.  *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 749 (Cal. 2015) (citing *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 205 (Cal. 2013)).  Both procedural and substantive unconscionability must be present for a court to refuse to enforce a contract. *See Armendariz v. Found Health Psychcare Servs.*, 6 P.3d 669, 690 (Cal. 2000). California courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*  However, courts cannot apply principles of unconscionability in a way that undermines the FAA's objective "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344.

### i. Procedural Unconscionability

The procedural unconscionability analysis focuses on the circumstances surrounding the creation of a contract and the presence of "oppression or surprise." *Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 352 (Ct. App. 2007) (citing *Armendariz*, 6 P.3d at 690).  In doing so, a court must uncover "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003) (quoting *Kinney v. United HealthCare Servs., Inc.*, 83 Cal. Rptr. 2d 348, 352–53 (Ct. App. 1999)).  Oppression results from "an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Gatton*, 61 Cal. Rptr. 3d at 352 (citing *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 381 (Ct. App. 2001)).  Surprise arises when the "agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (citing *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 145 (Cal. Ct. App. 1997)).  Procedural unconscionability typically takes the form of an adhesion contract, which is "a

standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Gutierrez v. Autowest, Inc.*, 7 Cal. Rptr. 3d 267, 275 (Ct. App. 2003) (quoting *Armendariz*, 6 P.3d at 689). However, an adhesive contract term not being read or understood "does not justify a refusal to enforce it"; rather, the imposed term can only be denied if it is also substantively unreasonable. *Id.*; *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) ("[T]he California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable.").

Here, Plaintiff asserts the Performer Agreements are contracts of adhesion. *See* Doc. No. 30 at 4. However, she fails to explain how or why the Agreements are adhesive contracts. Examining the Performer Agreements, the Court finds that they are standardized given the template format and the fact Plaintiff signed two identical Agreements for different film projects in June 2010 and August 2010. *See* Doc. No. 25-2 at 26, 30. However, "[a] standardized form in itself does not render a contract to be a contract of adhesion." *Coon v. Nicola*, 21 Cal. Rptr. 2d 846, 852 (Ct. App. 1993). As to unequal bargaining power, Plaintiff merely relies upon the allegations in her First Amended Complaint ("FAC") and has not provided evidence, such as a declaration, to offer facts showing unequal bargaining power between the signatories of the Agreements. In fact, Plaintiff does not address the other party to the Agreements, independent adult film producer Stebbins, and the nature of their relative bargaining strength. Without evidentiary support, Plaintiff has not demonstrated sufficient context surrounding the signing of the Agreements and whether there was unequal bargaining power. In essence, Plaintiff has not carried her burden to show that the Agreements were adhesive contracts. *See Arguelles-Romero v. Superior Court*, 109 Cal. Rptr. 3d 289, 305 (2010) ("It is the plaintiff's burden to introduce sufficient evidence to establish unconscionability."). Regardless, finding an adhesion contract would only begin the Court's analysis. *See Parada v. Superior Court*, 98 Cal. Rptr. 3d 743, 757 (Ct. App. 2009) (citing *Higgins v.*

*Superior Court*, 45 Cal. Rptr. 3d 293, 303 (2006)) ("A procedural unconscionability analysis also includes consideration of the factors of surprise and oppression.").

As to oppression, Plaintiff argues that she "was not given a chance to review or discuss the significance of the Agreements and her 'employment,' to the extent it could be considered that given the coercion that is the basis of the underlying action, was dependent upon her signing the Agreements." *See* Doc. No. 30 at 4–5. Similar to her argument regarding adhesive contracts, Plaintiff fails to supply the Court with evidence. Plaintiff does not supply the Court with a declaration or other evidence to show an inequality of bargaining power. *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 915–16 (Cal. 1997) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 926 P.2d 1061, 1072 (Cal. 1996)) ("[A] party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."). Again, Plaintiff does not discuss the other party to the Agreements, Stebbins, or facts showing how he had a stronger bargaining power over Plaintiff that deprived her of a meaningful negotiation or choice in the Agreements.

As to surprise, the arbitration clauses within the Agreements are not hidden. The clause is towards the end of the one-page Agreements. *See* Doc. No. 25-2 at 26, 30. The clause is in the same style and typeface as the other contract terms. Given that the terms of each arbitration clause were not hidden or otherwise buried within the Agreements, the Court finds that there is no surprise.

In sum, Plaintiff has not brought forth any meaningful evidence to show procedural unconscionability. "The issue of unconscionability is not an abstract one, but rather requires an examination of the actual facts." *See Gonzales v. Charter Commc'ns, LLC*, No. 2:20-cv-08299-SB (ASx), 2020 WL 6536902, at *5 (C.D. Cal. Oct. 26, 2020). Instead of relying on evidence, Plaintiff rests upon on her allegations, attorney argument in her opposition brief, and conclusory statements disconnected from the circumstances surrounding the creation of the Agreements. *Cf. Flaherty v. Warehousemen, Garage & Serv. Station Emp. Local Union No. 334*, 574 F.2d 484, 486 n.2 (9th Cir. 1978) (stating

that legal memoranda, oral argument, and allegations are not evidence for the purposes of a motion for summary judgment and do not create issues of fact); *Engalla*, 938 P.2d at 916 (noting that the trial court considers *evidence*—such as "all the affidavits, declarations, and other documentary evidence, as well as oral testimony"—to determine whether an arbitration agreements exists and whether there is a defense).  Without providing any meaningful evidence, Plaintiff's challenge fails.  *See Gonzales*, 2020 WL 6536902, at *5 ("In the absence of any meaningful evidence, the Arbitration Plaintiffs' challenge must fail.").

### ii. Substantive Unconscionability

The substantive unconscionability analysis focuses on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience."  *Ingle*, 328 F.3d at 1172 (quoting *Kinney*, 83 Cal. Rptr. 2d at 353).  Courts evaluate substantive unconscionability "as of the time the contract was made."  *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 122 (Ct. App. 1982).  The "shock the conscience" standard requires more than a contract term that "merely gives one side a greater benefit."  *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012).  "Substantive unconscionability may be shown if the disputed contract provision falls outside the nondrafting party's reasonable expectations."  *Parada*, 98 Cal. Rptr. 3d 759 (citing *Gutierrez*, 7 Cal. Rptr. 3d at 275).

Plaintiff's failure to show procedural unconscionability forecloses her unconscionability defense.  *See Armendariz*, 6 P.3d at 690 (stating that both procedural *and* substantive unconscionability are necessary to successfully raise an unconscionability defense); *Gonzales*, 2020 WL 6536902, at *6 ("The failure to prove procedural unconscionability is fatal to the Arbitration Plaintiffs' claim."); *Prizler v. Charter Commc'ns, LLC*, No. 3:18-cv-1724-L-MSB, 2019 WL 2269974, at *4 (S.D. Cal. May 28, 2019) (declining to analyze substantive unconscionability where the court found there was no procedural unconscionability).  Even if Plaintiff had shown some degree of unconscionability, Plaintiff has not shown the necessary, significant degree of substantive

unconscionability required under the sliding scale. *Armendariz*, 6 P.3d at 690 (providing the sliding scale framework for assessing different degrees of procedural and substantive unconscionability); *Gonzales*, 2020 WL 6536902, at *6.

Regarding the terms of the Agreements, Plaintiff argues they contain "little to no details concerning how she might initiate arbitration in the event of a dispute, and they contained no explanation of the significance of the provisions." Doc. No. 30 at 5. In response, Video Defendants point to the terms of the arbitration provisions:

> The parties shall submit all disputes relation [sic] to this Agreement, whether contract, tort, or both to binding arbitration, in accordance with California Code of Civil Procedure sections 1280 through 1294.2. The arbitrator shall not have the authority to award punitive or exemplary damages or attorney's fees. Either party may enforce the award of the arbitrator under section 1285 of the Code. The parties understand that they are waiving their rights to a jury trial. The Arbitration provision in this paragraph does not apply to disputes or a group of disputes where the total amount of the claim does not exceed five thousand dollars ($5,000.00) nor does it apply to any claim solely for injunctive relief.

Doc. No. 25-2 at 26, 30.

The Court finds Plaintiff's argument unavailing. Plaintiff's reliance on *OTO, L.L.C. v. Kho*, 447 P.3d 680 (Cal. 2019) is distinguishable from the facts here. As an initial matter the *OTO* court found "an 'extraordinarily high' degree of procedural unconscionability." *Id.* at 690. Additionally, *OTO* involved the court contrasting the efficient, informal, and affordable wage claim Berman proceedings in contrast to an arbitral procedure that incorporated the "intricacies of civil litigation." *Id.* at 695. In essence, the Court found that such arbitration procedures—when contrasted with the Berman procedures—were "imposed in a procedurally unconscionable fashion" and became substantively unconscionable. *Id.* at 695–96; *see also id.* at 695 n.17, 698 ("The substantive fairness of this particular agreement must be considered in terms of what [the employee] gave up and what he received in return.").

20-cv-1818-MMA (MSB)

As noted above, Plaintiff does not demonstrate procedural unconscionability. Plaintiff does not argue or show what rights or remedies she would forfeit in arbitration in contrast to the alternative forum of this Court.  The arbitration provisions directly incorporate California Code of Civil Procedure sections 1280 through 1294.2, which comprise part of the California Arbitration Act ("CAA").  *See* Doc. No. 25-2 at 26, 30. The CAA details how to initiate arbitration proceedings.  *See* Cal. Civ. Proc. Code §§ 1281.2–1284.3.  Notably, Plaintiff does not point to the specific terms of the provision or the incorporated CAA sections, and she does not explain how they are "overly harsh," "unduly oppressive," "so one-sided as to 'shock the conscience,'" or "unreasonably favorable to the more powerful party."  *OTO, L.L.C.*, 447 P.3d at 692–93 (first quoting *Stirlen*, 60 Cal. Rptr. 2d at 145; then quoting *Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 511 (Cal. 1985); then quoting *Pinnacle Museum Tower Assn.*, 282 P.3d at 1232; and then quoting *Sonic-Calabasas A, Inc.*, 311 P.3d at 202).  As to Plaintiff's argument that the provisions do not explain their significance, the provisions plainly state that arbitral proceedings will govern contract or tort disputes over the Agreement and that "[t]he parties understand that they are waiving their rights to a jury trial."  Doc. No. 25-2 at 26, 30.  Aside from Plaintiff's argument, the Court finds that the terms are not so one-sided or harsh as to shock the conscience.  Therefore, Plaintiff does not carry her burden to show substantive unconscionability.

### iii. Conclusion

Accordingly, because Plaintiff does not meet her burden, Plaintiff's attempt to invalidate the Agreements under the unconscionability doctrine fails.

### 2. Duress and Undue Influence

In addition to unconscionability, Plaintiff argues the agreements are void or voidable because she signed them under duress or undue influence.  *See* Doc. No. 30 at 5. Relying on the allegations in her FAC, Plaintiff contends she was under duress when she signed the agreements because "[s]he was lured by the false promises of certain Defendants to participate and in some instances forced to work."  *See id.* at 6.  Plaintiff

also notes that her "consideration for her obligations under the Agreements fails in numerous ways," referring to unconscionability, uneven bargaining power, and failure to pay. *See id.* Video Defendants respond that Plaintiff fails to support her argument with evidence and, instead, merely relies on the allegations in her FAC. *See* Doc. No. 33 at 6–7.

The general contract defense of duress may invalidate an arbitration agreement. *See Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc.*, 517 U.S. at 687); *see also* Cal. Civ. Code §§ 1565, 1566, 1567, 1559, 1689. Under California law, duress is a means to "attack[] the validity of a contract." *In re Marriage of Baltins*, 260 Cal. Rptr. 403, 413 (Ct. App. 1989). "Duress, which includes whatever destroys one's free agency and constrains her to do what is against her will, may be exercised by threats, importunity or any species of mental coercion." *Id.* (brackets omitted) (quoting *In re Marriage of Gonzalez*, 129 Cal. Rptr. 566, 570 (Ct. App. 1976)); *see also Tarpy v. Cty. of San Diego*, 1 Cal. Rptr. 3d 607, 614 (Ct. App. 2003). Duress arises "where a party 'intentionally used threats or pressure to induce action or nonaction to the other party's detriment.'" *In re Marriage of Baltins*, 260 Cal. Rptr. at 413 (quoting *In re Marriage of Stevenot*, 202 Cal. Rptr. 116, 132 n.6 (Ct. App. 1984)). The coercing party "must induce the assent of the coerced party, who has no reasonable alternative to succumbing." *Id.* at 414 (citing *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 204 Cal. Rptr. 86, 89 (Ct. App. 1984)). The party asserting that an agreement was formed under duress bears the burden of proof by a preponderance of the evidence. *See Changzhou AMEC E. Tools & Equip. Co. v. E. Tools & Equip., Inc.*, No. EDCV 11-00354 VAP (DTBx), 2012 WL 3106620, at *14 (C.D. Cal. July 30, 2012) (citing *In re Marriage of Balcof*, 47 Cal. Rptr. 3d 183, 193 (Ct. App. 2006)); *see also Engalla*, 938 P.2d at 915–16 (citing *Rosenthal*, 926 P.2d at 1072) ("[A] party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.").

Similarly, the general contract defense of undue influence may invalidate an arbitration agreement. *See Richards v. Stanley*, No. CIV-S-04-2564 DFL-DAD, 2005

WL 8176778, at *4 (E.D. Cal. June 20, 2005); *see also* Cal. Civ. Code §§ 1565, 1566, 1567, 1575, 1689.  Under California law, there are three different types of undue influence: (1) "[i]n the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him"; (2) "[i]n taking an unfair advantage of another's weakness of mind"; or (3) "taking a grossly oppressive and unfair advantage of another's necessities or distress."  Cal. Civ. Code § 1575.  Essentially, undue influence involves "undue susceptibility in the servient person" and "excessive pressure by the dominating person," which results in the "will of the servient person being in fact the will of the dominant person."  *Odorizzi v. Bloomfield Sch. Dist.*, 54 Cal. Rptr. 533, 540 (Ct. App. 1966).  The party asserting that an agreement was formed under undue influence bears the burden of proof.  *See Olam v. Cong. Mortg. Co.*, 68 F. Supp. 2d 1110, 1139 (N.D. Cal. 1999); *see also Engalla*, 938 P.2d at 915–16 (citing *Rosenthal*, 926 P.2d at 1072).

Here, Plaintiff does not carry her burden to show duress or undue influence.  As with her unconscionability argument, Plaintiff rests upon her allegations and attorney argument.  *See* Doc. No. 30 at 6–7.  Plaintiff's contract defenses require more than mere allegations or argument.  The defenses require evidentiary support.  *See Engalla*, 938 P.2d at 916 (stating that a party opposing arbitration carries the burden of proof and noting that courts rely upon *evidence*—such as "affidavits, declarations, and other documentary evidence, as well as oral testimony").  Accordingly, by not providing the Court with any evidence, Plaintiff's attempt to invalidate the Agreements under the duress and undue influence doctrines fails.

### 3. Conclusion

Video Defendants provide the Court with the Performer Agreements, which contain arbitration provisions.  *See* Doc. No. 25-2 at 26, 30.  Plaintiff challenges the validity of these agreements on the grounds of unconscionability, duress, and undue influence.  However, Plaintiff does not carry her burden on these defenses to invalidate

20-cv-1818-MMA (MSB)

the Agreements or their arbitration clauses.  Thus, the Court is left with the valid

agreements to arbitrate within the Performer Agreements.

**C. Whether the Arbitration Agreements Encompass the Dispute at Issue**

Neither party clearly focuses on second prong of the arbitration analysis: "whether

the agreement encompasses the dispute at issue." *Kilgore*, 718 F.3d at 1058 (quoting

*Chiron Corp.*, 207 F.3d at 1130).  In their motion, Video Defendants briefly argue that

"the Performer Agreements are clear that any dispute between Plaintiff and the Video

Defendants shall be submitted to binding arbitration."  Doc. No. 25 at 9; *see also id.* at 6.

Plaintiff does not address the second prong.  Plaintiff bears the burden to prove the claims

are unsuitable for arbitration, and the Court resolves ambiguities regarding the scope of

the arbitration clause in the favor of arbitration.  *See Green Tree Fin. Corp.-Alabama*,

531 U.S. at 91; *Volt Info. Scis., Inc.*, 489 U.S. at 475–76.

For the purpose of assessing the scope of the provisions, the applicable parts of the

arbitration provisions are as follows:

> The parties shall submit all disputes relation [sic] to this Agreement, whether
> contract, tort, or both to binding arbitration, in accordance with California
> Code of Civil Procedure sections 1280 through 1294.2.  The arbitrator shall
> not have the authority to award punitive or exemplary damages or attorney's
> fees. . . .  The Arbitration provision in this paragraph does not apply to
> disputes or a group of disputes where the total amount of the claim does not
> exceed five thousand dollars ($5,000.00) nor does it apply to any claim
> solely for injunctive relief.

Doc. No. 25-2 at 26, 30.  Plaintiff brings several claims against Video Defendants that

relate to work she performed in their pornographic films.  The allegations include the

participation in a venture in violation of the TVPA, financially benefiting from sex

trafficking in violation of the TVPA, conspiracy to commit violation of the TVPA, and

violations of California Labor Code.  *See* FAC ¶¶ 144–69, 182–88.  The TVPA "creates a

cause of action for tortious conduct that is ordinarily intentional and outrageous."

*Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011).  Because Plaintiff's claims against Video Defendants sound in tort, no party disputes whether the claims fall under the scope of the Agreements, and the Agreements contain comprehensive language pertaining to "all disputes," the Court finds that the Agreements encompass the dispute at issue.

## D. Whether There Is a Risk of Conflicting Rulings Where the Action Would Continue with Other Defendants

Alternatively, Plaintiff argues that arbitration and this action could yield conflicting rulings on common factual and legal issues if the Court were to compel arbitration.  *See* Doc. No. 30 at 2, 7.  Plaintiff relies on California Code of Civil Procedure section 1281.2(c).  *See id.* at 7.  Video Defendants respond that Plaintiff fails to identify any examples of potential conflicting rulings.  *See* Doc. No. 33 at 8.  Video Defendants add that the allegations against them are separate and do not impact the other Defendants.  *Id.*

Under section 1281.2(c),

> the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that . . . (c) [a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.

Cal. Civ. Proc. Code § 1281.2(c).  "Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement."  *Mount Diablo Med. Ctr. v. Health Net of California, Inc.*, 124 Cal. Rptr. 2d 607, 617 (Ct. App. 2002).  The statute provides the following options if the conditions of section 1281.2(c) are satisfied:

> the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding.

*Id.* The Supreme Court has held that the application of section 1281.2(c) to stay arbitration in accordance with the terms of the arbitration agreement does not necessarily undermine the goals and policies of the FAA. *Volt Info. Scis., Inc.*, 489 U.S. at 477–78 (1989). Where the parties agree to follow state arbitration rules, "enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." *Id.* at 479; *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1213 (9th Cir. 1998) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995)) ("[G]eneral choice-of-law clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators.").

Similar to the contracts in *Mastrobuono* and *Wolsey*, Video Defendants and Plaintiff have enforceable Performer Agreements with arbitration and choice-of-law provisions. *Compare Wolsey, Ltd.*, 144 F.3d at 1212, *with* Doc. No. 25-2 at 26, 30. However, unlike *Mastrobuono* and *Wolsey*, the arbitration provisions here explicitly and unambiguously incorporate California Code of Civil Procedure sections 1280 through 1294.2.[2] *Compare Wolsey, Ltd.*, 144 F.3d at 1212, *with* Doc. No. 25-2 at 26, 30. Thus, the parties incorporated section 1281.2(c) into their Agreements, and the Court must give

---

[2] In rebutting Plaintiff's argument, Video Defendants focus on an analysis of section 1281.2(c). *See* Doc. No. 33 at 8–9, 9 n.2. They do not dispute that section 1281.2 governs enforcement of the Performer Agreements. *See id.*; *see also id.* at 6 ("[B]y incorporating Sections 1280 through 1294.2 of the California Code of Civil Procedure, the arbitration provisions provide a comprehensive and thorough set of rules for how the arbitration is to be conducted.").

effect to the "contractual rights and expectations of the parties." *Volt Info. Scis., Inc.*, 489 U.S. at 478; *see also Defrees v. Kirkland*, No. CV 11-4272 GAF (SPx), 2012 WL 12883971, at *5 (C.D. Cal. Jan. 17, 2012) (finding that section 1281.2(c) governed enforcement of the arbitration agreement where there were arbitration and choice-of-law provisions, the provisions were consistent, and the arbitration clause stated that the CAA governed arbitration proceedings), *aff'd*, 579 F. App'x 538, 541 (9th Cir. 2014).

Plaintiff conclusively argues there will be a possibility of conflicting rulings on common legal and factual issues. *See* Doc. No. 30 at 7. Plaintiff neglects to point to instances where possible legal or factual conflicts could arise. However, Plaintiff can rely on her allegations to show a possibility of conflicting rulings. *See Acquire II, Ltd. v. Colton Real Estate Grp.*, 153 Cal. Rptr. 3d 135, 146 (Ct. App. 2013) (citing *Abaya*, 118 Cal. Rptr. 3d 345, 351 (Ct. App. 2010)) ("We emphasize the allegations of the parties' pleadings may constitute substantial evidence sufficient to support a trial court's finding that section 1281.2(c) applies."). Plaintiff's allegations against each Video Defendant arise out of the same transactions or events that involve Defendant Steele—a nonparty to the Performer Agreements. *See* FAC ¶¶ 6–8, 56–57, 60–61, 145–51. Plaintiff alleges Steele and Video Defendants had a relationship where Steele forced Plaintiff to perform in Video Defendants' pornographic films, Video Defendants paid Steele and not Plaintiff, and Video Defendants "ratified and perpetuated the human trafficking scheme." *Id.* ¶¶ 6–8.

The Court finds that there is more than a mere possibility of conflicting factual rulings regarding the relationship between Steele and Video Defendants. In fact, Video Defendants challenge Plaintiff's claims regarding their interaction with Steele and the alleged sex trafficking. *See* Doc. No. 25 at 8 (citing Dunn Decl., Doc. No. 25-1 ¶¶ 5–6, 8); Doc. No. 33 at 8. If the Court were to compel arbitration, the Court and the arbitrator would need to resolve overlapping issues that could result in conflicting rulings. Video Defendants' objections speak to the core of Plaintiff's allegations against them, but "section 1281.2(c) prohibits a trial court from considering the merits of a party's claims

1   when ruling on a motion to compel arbitration." *Acquire II, Ltd.*, 153 Cal. Rptr. 3d at 146

2   (first citing Cal. Civ. Proc. Code § 1281.2(c); and then citing *California Corr. Peace*

3   *Officers Assn. v. State of California*, 47 Cal. Rptr. 3d 717, 726 (Ct. App. 2006)).

4   Therefore, the Court finds that Plaintiff's allegations satisfy her burden under section

5   1281.2(c) to show (1) Video Defendants are parties to this pending action with Steele,

6   who is a third party to the Performer Agreements; (2) the alleged transactions between

7   each Video Defendant, Steele, and Plaintiff are related to the alleged sex trafficking

8   allegations; and (3) there is a possibility of conflicting rulings on a common issue of fact:

9   the nature of Video Defendants' interactions and relationship with Steele.

10       Given that Plaintiff satisfies the requirements of section 1281.2(c), the final

11   paragraph of section 1281.2 gives the Court several options: (1) refuse to enforce the

12   arbitration agreement and order the parties to proceed in this single action, (2) "order

13   intervention or joinder as to all or only certain issues," (3) order arbitration of the parties

14   who agreed to arbitrate and stay this action, or (4) stay the arbitration pending the result

15   of this action.  Cal. Civ. Proc. Code § 1281.2.  Here, whereas Plaintiff seeks option (1),

16   *see* Doc. No. 30 at 8, Video Defendants prefer options (3) or (4).  *See* Doc. No. 33 at 9

17   n.2.  After determining that section 1281.2(c) applies, courts may consider judicial

18   economy and "other similar factors" in selecting the outcome.  *Acquire II, Ltd.*, 153 Cal.

19   Rptr. 3d at 151.  Additionally, "[w]hat the trial court chooses to do in this situation is a

20   matter of its discretion, guided largely by the extent to which the possibility of

21   inconsistent rulings may be avoided."  *Id.* at 154 (quoting *Metis Dev. LLC v. Bohacek*,

22   133 Cal. Rptr. 3d 585, 595 (2011)).

23       Because the second, third, and fourth causes of action call into question the

24   conduct between Steele and each Video Defendant, the Court finds that the best option is

25   to decline to compel arbitration at this time.  Compelling arbitration while this action

26   continues could lead to conflicting findings of fact regarding the relationship between

27   Steele and Video Defendants. *Cf. Defrees*, 2012 WL 12883971, at *6–7 (denying

28   arbitration where there could be conflicting rulings on law and fact and where staying

arbitration would unnecessarily lengthen and duplicate efforts).  This option also would reduce prejudice against Plaintiff's claims against Steele, who is not a party to the Performer Agreements.  Finally, this option still gives deference to the strong policy in favor of enforcing arbitration agreements pursuant to their terms where the arbitration provisions here incorporate section 1281.2, *see* Doc. No. 25-2 at 26, 30, which envisions this result as a possible outcome.  Accordingly, at this time, the Court refuses to enforce the arbitration agreement and declines to compel arbitration.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Video Defendants' motion to compel arbitration.

**IT IS SO ORDERED**.

Dated: March 11, 2021

_____
HON. MICHAEL M. ANELLO
United States District Judge

20-cv-1818-MMA (MSB)